UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION


POLARIS POOL SYSTEMS, INC.,

        Plaintiff,

v.                                                  CASE No. 8:05-CV-1679-T-TGW

GREAT AMERICAN WATERFALL
COMPANY, et. al.,

        Defendants.

_____


## O R D E R

A California district court entered a preliminary injunction against the defendants based upon restrictive covenants contained in agreements signed by defendants Douglas A. Ruthenberg and Benjamin F. Dixon.  As their repeated challenges show, the defendants refuse to accept the preliminary injunction, even after it was affirmed on appeal by the Ninth Circuit.  With respect to their most recent challenge, the defendants, who are not entitled to de novo review in this court, have failed to show changed circumstances that would warrant dissolving or modifying the injunction.

I.

This case arises from the purchase of stock by the plaintiff, Polaris Pool Systems, Inc., from Florida Falls Inc., a company located in Spring Hill, Florida, that manufactured and sold waterfalls, lighting and other pool equipment (Doc. 3-1, p. 3). The defendants are Douglas A. Ruthenberg and Benjamin F. Dixon, former employees of Polaris, and Great American Waterfall Company, a competing business they allegedly started (id. at p. 1).

On July 31, 1998,  Polaris purchased the stock of Florida Falls for $4,000,000 from defendants Ruthenberg and Dixon, who were the shareholders of the company (id. at p. 3).  After the purchase, Florida Falls became a subsidiary of Polaris.  In connection with the stock purchase, Ruthenberg and Dixon signed employment, confidentiality, and non-compete agreements (Doc. 3-2, Exs. A; B).  Under the agreements, Ruthenberg was employed as the general manager of Florida Falls and Dixon was employed as its general sales manager (id., Ex. A, p. 1; Ex. B, p. 1).  The agreements provide that they are to be construed under the laws of California (id., Ex. A, p. 10; Ex. B, p. 10).

The employment agreements contain restrictive covenants preventing Ruthenberg and Dixon from competing with Polaris, from soliciting customers and employees of Polaris, from disclosing Polaris's confidential information, and from using the confidential information against Polaris (id., Exs. A; B).  Under the restrictive covenants, Ruthenberg and Dixon agreed not to compete with Polaris for two years after their last day of employment (id., Ex. A, p. 5; Ex. B, p. 4).

Around October 1, 1999, the companies merged and Florida Falls became a part of Polaris (Doc. 3-1, p. 4, ¶42).  Polaris continued operating the business from the Florida Falls location in Spring Hill, Florida (id.).  Polaris rented the building for its operations from Ruthenberg, who owned the building (id.).

On November 7, 2001, Dixon's employment with Polaris ended (id.).  In August 2003, Polaris decided to move the company from Florida to California and thus terminate its operations in Florida (id.).  Ruthenberg's employment with Polaris ended on August 31, 2003 (id. at p. 5).

According to Polaris, problems arose in August 2003 because a new company was formed that month under the name of Great American

Waterfall Company (id.).  Dixon is the president of that company (Doc. 9, p. 1).  At the time of the company's formation, Ruthenberg's daughter and Dixon each owned forty-five percent of the company's stock, with the remaining ten percent owned by two former employees of Polaris (Doc. 3-1, p. 5).  Great American's incorporation papers listed its address as the same location that Polaris was using in Spring Hill, Florida (id.).

Polaris, therefore, claims that Ruthenberg and Dixon, through Great American, are competing with it in direct contravention of their restrictive covenants.  In this respect, Polaris believes that Ruthenberg is controlling Great American through his daughter.  Polaris also alleges that, during its move, certain files relating to customer lists, price lists, vendor lists, and other confidential documents were not sent to California (id. at pp. 5-6).

On November 5, 2003, Polaris filed an eight-count complaint against Great American, Ruthenberg and Dixon in the United States District Court for the Southern District of California (Doc. 3-1).  The suit alleged claims against Ruthenberg and Dixon for breach of contract and against all defendants for tortious interference with business relations, misappropriation of trade secrets, conversion, trademark infringement and unfair competition

(id.).  As part of its relief, Polaris sought the issuance of a preliminary and permanent injunction.  In support of its request for preliminary relief, Polaris on January 26, 2004, filed a motion for a preliminary injunction.

Nothing happened on that motion until December 3, 2004, when United States District Judge Roger T. Benitez (to whom the matter had been transferred) entered a preliminary injunction (Doc. 10-1).  The preliminary injunction provides interim relief, including the requirements that the defendants are to return to Polaris its customer files and other documents, that they are not to solicit Polaris's customers "whose identity became known to Defendants while in the employ of Polaris," and that they are prevented from "misappropriating Polaris' trade secrets or confidential or proprietary information...." (id.).  In addition, the injunction provides:

> ... that pending a trial on the merits of this case defendant Douglas A. Ruthenberg and his agents, servants, employees and attorneys, and all those in active concert or participation with him or them who receive actual notice of the order shall be enjoined from:
>
> 8. Engaging directly or indirectly in competitive activities in violation of Ruthenberg's employment agreement with Polaris, including providing services to or having any contact or connection

whatsoever with Great American Waterfall
Company or any other competitor of Polaris.

Shortly thereafter, the defendants, on December 15, 2004, orally requested from Judge Benitez clarification of the preliminary injunction order and a stay of the injunction pending the clarification (Doc. 12, p. 2; <u>see</u> <u>also</u> Doc. 14-1).  Judge Benitez denied the defendants' requests (Doc. 12, pp. 2-3).

Subsequently, on December 22, 2004, the defendants filed an <u>ex</u> <u>parte</u> motion for modification and clarification of the preliminary injunction (Doc. 14-1).   Among other things, the defendants requested (1) that the preliminary injunction not affect the landlord-tenant relationship between Great American and Ruthenberg, (2) that paragraph 8 not prohibit social interaction between Ruthenberg and Great American's personnel, and (3) that counsel for Ruthenberg not be precluded from acting as counsel for the other defendants (<u>id</u>.).

Prior to the matter for clarification being resolved by the district court, the defendants, on January 3, 2005, filed a notice of appeal of the preliminary injunction (<u>id</u>.).  On May 11, 2005, the Ninth Circuit Court of Appeals affirmed the district court's grant of the preliminary injunction (<u>id</u>.).

Case 8:05-cv-01679-TGW   Document 36   Filed 02/07/06   Page 7 of 19 PageID 417

In the interim, on April 15, 2005, Polaris filed a motion alleging that the defendants were in contempt of the preliminary injunction (Doc. 11, p. 2). In response, the defendants filed a memorandum of law regarding the parameters and prohibitions of the preliminary injunction (Doc. 14-1).

On May 13, 2005, a hearing was conducted on the matter (Doc. 14-2). At the hearing, the parties discussed the provisions of the preliminary injunction, including paragraph 8. Judge Benitez ordered the parties to meet and confer in an effort to reach an understanding concerning a clarification of his preliminary injunction (id. at p. 58). Judge Benitez explained that he did not want to clarify the injunction himself because he thought that the defendants would seek clarification after clarification (id. at p. 28).

The parties met and conferred, but could not agree on all of the clarifications (Doc. 11, p. 2). Each party, therefore, submitted a proposed order for the court to consider (id.). The defendants in their proposed order requested some limitations with respect to the preliminary injunction, including a request that paragraph 8 terminate on August 31, 2005, because Ruthenberg's restrictive covenant expired on that day (Doc. 14-3).

On June 17, 2005, Judge Benitez signed an order clarifying the preliminary injunction (Doc. 10-1).  The order stated, among other things, that Great American was to vacate Ruthenberg's building, that Ruthenberg was not prohibited from interacting socially with Great American's personnel or other friends and family that are in the swimming pool and spa industry, and that, as long as Ruthenberg or a family member has an interest or financial benefit in Great American, Great American cannot  solicit Polaris's customers whose identities became known through Polaris (id.).  Judge Benitez did not adopt the defendants' proposed termination date of August 31, 2005, for paragraph 8 based upon the expiration date of Ruthenberg's restrictive covenant (see id.).

Less than two months later, on August 12, 2005, the defendants filed with the court a motion to dissolve or modify the preliminary injunction (Docs. 5, 6).  They also moved to have the matter transferred to this court.  On September 13, 2005, the motion to transfer was granted and the case was transferred here (Doc. 1).

Thereafter, the defendants' motion to dissolve or modify was referred to me for a report and recommendation (Doc. 21).  At a hearing conducted on the matter, the issue was raised whether  Ruthenberg's

restrictive covenant, which expired on August 31, 2005, could be the basis for preliminary injunctive relief until the trial of this case. The parties were directed to file supplemental memoranda on the issue and both parties have done so (Docs. 27, 28).

Subsequently, the parties consented to the exercise of jurisdiction by a United States Magistrate Judge (Doc. 33).

## II.

The defendants in their motion now seek to dissolve the preliminary injunction, claiming that it is no longer necessary to protect the plaintiff's trade secrets and that the plaintiff has not suffered irreparable harm from the formation of Great American (Doc. 6). In the alternative, the defendants request that the preliminary injunction be modified in certain respects, including eliminating paragraph 8 of the preliminary injunction and raising the bond from $25,000 to $1,000,000.

In light of the number of challenges that have been directed to the preliminary injunction, and the length of time that passed between its entry and the filing of the current motion, the motion cannot plausibly be viewed as a motion for reconsideration. See Favia v. Indiana University of Pennsylvania,

7 F.3d 332, 337-38 (3rd Cir. 1993). Rather, it is what it is called: a motion to dissolve or modify the preliminary injunction.

There are no time constraints on a court to vacate or modify a preliminary injunction. Credit Suisse First Boston Corp. v. Grunwald, 400 F.3d 1119, 1124 (9th Cir. 2005). However, "[m]odification of an injunction is proper only when there has been a change of circumstances between entry of the injunction and the filing of the motion that would render the continuance of the injunction in its original form inequitable." Favia v. Indiana University of Pennsylvania, supra, 7 F.3d at 337. Therefore, modification "avoid[s] the injustice of requiring a defendant to continue complying with an injunctive order under circumstances that would have prevented its entry in the first place." Id. at 338.

In their motion for dissolution or modification, the defendants make four arguments: the preliminary injunction is no longer necessary to protect the plaintiff's trade secrets; the plaintiffs have not suffered irreparable harm; paragraph 8 of the preliminary injunction should not remain in force beyond August 31, 2005; and the bond should be increased to $1,000,000. The first three arguments are simply reassertions of contentions rejected by

Judge Benitez.   In the absence of any substantial showing of changed circumstances, it is inappropriate for me to render a second opinion on those determinations, particularly since California law governs the likelihood of success on the merits and Judge Benitez obviously has a greater familiarity with that law than I do.

The defendants claim first that the preliminary injunction is no longer necessary to protect the plaintiff's trade secrets (Doc. 6, pp. 4-5).  The defendants assert that the plaintiff's pricing information is now two years old and cannot have any value today (id. at p. 4).  The defendants, however, acknowledge that they have "repeated numerous times in prior motions and the summary judgment and transfer motions presently pending before the [c]ourt" that the plaintiff's customers are mainly large distributors and pool builders that can be identified easily by simple searches on the internet, trade journals, directories and catalogues (id.).  Having lost this contention before Judge Benitez and probably the Ninth Circuit, they are not entitled to further consideration of it here. Credit Suisse First Boston Corp. v. Grunwald, supra, 400 F.3d at 1124; Favia v. Indiana University of Pennsylvania, supra.

Moreover, with respect to the contention that the trade secrets are now two years old, Judge Benitez modified the preliminary injunction in June 2005 and that was less than two months prior to the filing of the present motion. Therefore, there was not a large gap in time between the modification and the defendants' motion. Further, the defendants, unsuccessfully, made the same two-year argument to Judge Benitez in their proposed order for clarification (Doc. 14-3, p. 6).[1]

The defendants' second contention is also a reassertion of a previously rejected argument, as is reflected by the defendants' claim that "the balance of hardships has always been sharply in favor of defendants" (Doc. 6, p. 5). To the extent that the motion simply seeks reconsideration of that matter, it will be summarily rejected.

On their second point, the defendants also claim that new evidence establishes that the plaintiff has not suffered irreparable harm from competition by Great American and that the plaintiff knew previously that it had not suffered irreparable harm (id. at pp. 5-6). In support of their

_____

[1]The defendants argued "[i]t should be kept in mind that we are now almost two years from the start up of GAWC in competition with Polaris. It is unlikely that any potential waterfall customer could still be a trade secret of Polaris in the hands of [d]efendants or any of their officers and employees" (Doc. 14-3, p. 6).

argument, the defendants refer to the deposition of Frank Lee, a former district manager of Polaris for the state of Florida, that was taken on June 14, 2005, which was three days before Judge Benitez entered his order of clarification (id.).

Assuming that Lee's testimony qualifies as new evidence, it does not show changed circumstances that make the preliminary injunction inequitable. Both sides find something in Lee's deposition to support that side's position. In all events, the portions of his testimony relied upon by the defendants do not strike me as sufficiently compelling to warrant the conclusion that there are changed circumstances that render continued enforcement of the injunction inequitable.

The defendants' third contention is that paragraph 8 of the preliminary injunction order should not remain in force beyond August 31, 2005, because it is based on Ruthenberg's restrictive covenant that expired on that date (id. at pp. 6-8). Unlike the prior two arguments, which essentially sought untimely reconsideration of rejected contentions, this argument involves a change in circumstances in that the covenant expired after Judge Benitez entered his order of clarification. However, as previously noted, the

up-coming expiration date was asserted to Judge Benitez as a ground of modification and he rejected that contention by retaining paragraph 8 until the date of trial, which was expected to be after the expiration date.

Nevertheless, because this contention at least seems to involve changed circumstances (although an anticipated change brought to Judge Benitez's attention), I am willing to give the matter additional consideration. My conclusion, however, is the same as his: Paragraph 8 is appropriately extended beyond the expiration date of the restrictive covenant.

Ruthenberg's employment agreement stated that he "agrees that, during the Employment Term and for 2 years thereafter (the "Noncompete Period"), he shall not directly or indirectly own any interest in, manage, control, participate in, consult with, render services for, or in any manner engage in any business competing with the business of the Company, as such businesses exist or are in process on the Date of Termination of Ruthenberg's employment, within any geographical area in which the Company engages in such businesses" (Doc. 3-2, Ex. A, p. 5).

Ruthenberg's employment with the plaintiff ended on August 31, 2003 (Doc. 3-1, p. 5). Consequently, the restrictive covenant's two-year

-14-

provision would have terminated on August 31, 2005.  As indicated, paragraph 8 of the preliminary injunction prevents Ruthenberg from competing with the plaintiff until a trial on the merits of the case (Doc. 10-1, p. 4).  Therefore, the issue is whether the restrictive covenant should, as suggested by the plaintiff, be extended beyond its expiration date until a trial on the merits occurs.  The parties were given an opportunity to research and submit additional memoranda on this question.

The case that I find authoritative is North American Products Corp. v. Moore, 196 F.Supp.2d 1217 (M.D. Fla. 2002).[2]  In that case, United States District Judge Wm. Terrell Hodges, in granting a preliminary injunction enforcing a restrictive covenant, decided that the time period of the restriction should begin to run, not from the date when the employee's employment ended, as the covenant provided, but from the date the preliminary injunction was entered.  Following the approach used by Judge Hodges, Ruthenberg's

---

[2]It is noted that, in fashioning preliminary injunctive relief, federal law, rather than state law, provides the governing standards.  Thus, while state law determines the validity of the restrictive covenants when considering the element of likelihood of success on the merits, federal law provides the appropriate guidelines concerning equitable considerations when establishing the terms of the preliminary injunction.  See Ferrero v. Associated Materials, Inc., 923 F.2d 1441, 1448 (11th Cir. 1991); Southern Milk Sales, Inc. v. Martin, 924 F.2d 98, 101-02 (6th Cir. 1991); Wright, Miller & Kane, Federal Practice and Procedure: Civil 2d §2943, pp. 78-80.

two-year non-compete agreement should run from December 3, 2004, when Judge Benitez entered the preliminary injunction, until December 3, 2006, or the completion of the trial, whichever comes first.

This conclusion is supported by two factors, in addition to Ruthenberg's agreement not to compete for two years.  First, the court in the Southern District of California inexplicably failed to rule on the plaintiff's motion for preliminary injunction for more than ten months.  The plaintiff should not be denied a substantial portion of its right to compliance with the non-compete agreement because of that failure.  See Guy Carpenter & Co., Inc. v. Provenzale, 334 F.3d 459, 464 (5th Cir. 2003).  Notably, if the court had ruled shortly after the motion was filed on January 26, 2004, the two-year non-compete period would have virtually, if not completely, run.

Second, in light of the fact that the final pretrial conference was scheduled for October 14, 2005, the trial of this case would most likely have taken place by now if the case had remained in the Southern District of California.  The defendants, however, successfully sought a transfer to this district and thereby delayed the trial.  In other words, the defendants, by their own conduct, have extended the viability of the preliminary injunction, which

-16-

by its terms was to apply until the trial of the case.  There is no justification for relieving them of the obvious consequences of their procedural move.

For these reasons, therefore, the request to eliminate paragraph 8 is denied.  Rather, as indicated, the two-year period for the non-compete provision shall extend to December 3, 2006, or the completion of the trial, whichever comes first.  Nevertheless, if I reach the conclusion at the forthcoming preliminary pretrial conference that the plaintiff is delaying the trial for the purpose of obtaining the benefit of paragraph 8, I am prepared to terminate the provision earlier (but I want no motion from the defendants on that issue).

Finally, the defendants seek to increase the bond from $25,000 to $1,000,000, claiming they will suffer more than $25,000 in damages if it is determined later that the preliminary injunction was wrongfully issued (Doc. 5, p. 1; Doc. 6, pp. 8-10).  The plaintiff responds that no new information exists justifying an increase in the bond and that the defendants' claimed damages are highly speculative (Doc. 11, pp. 15-19).

The defendants' request for a bond in the amount of $1,000,000 is wholly unpersuasive.  A bond in that amount seems grossly exaggerated and

is not supported by any cogent showing of potential damage. Notably, the defendants have not suggested any reasonable bond in a lesser amount. Moreover, the defendants have not demonstrated that the bond set by Judge Benitez was erroneous.

However, there has been a change in circumstance due to the transfer of this case from the Southern District of California. When Judge Benitez set the bond, the case was going to go to trial in the Southern District of California based on that district's case management. Now, the trial in this matter has been postponed with the transfer and it is not clear when the case will be scheduled for trial.

A court has sound discretion in setting the amount of the bond. Carillon Importers, Ltd. v. Frank Pesce International Group Limited, 112 F.3d 1125, 1127 (11th Cir. 1997). Moreover, a court may increase the bond if a change in circumstances has occurred. Bebe Stores, Inc. v. May Department Stores International, 313 F.3d 1056, 1058 (8th Cir. 2002).

Here, there is a change in the length of time that the preliminary injunction will likely remain in effect. The injunction will probably be

operative for about twice as long as Judge Benitez thought when he set the bond.  In light of this circumstance, the bond will be increased to $50,000.

It is, therefore, upon consideration

ORDERED:

That the defendants' Motion to Dissolve or Modify Preliminary Injunction and/or for Increased Security (Doc. 5) is hereby GRANTED to the extent that the bond is increased to $50,000.  In all other respects, the motion is hereby DENIED.

DONE and ORDERED at Tampa, Florida, this 7th day of February, 2005.

THOMAS G. WILSON
UNITED STATES MAGISTRATE JUDGE